UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MUHAMMAD FAISAL,<br><br>                          Plaintiff,<br><br>               v.<br><br>CITY OF NEW YORK,<br>NYPD OFFICER CHRISTOPHER BOARO,<br>NYPD OFFICER JOHN DOES 1-3,<br><br>                          Defendants. | Case No. 15-CV-3786<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW THE PLAINTIFF, Muhammad Faisal, by his attorneys, Steven M. Warshawsky and The Warshawsky Law Firm, for his complaint against the defendants and alleging as follows:

**NATURE OF THE CASE**

1.     This is a civil rights action under 42 U.S.C. § 1983 and New York state law arising from the plaintiff's arrest on October 14, 2014, by officers of the New York City Police Department.  These officers subjected the plaintiff to false arrest, false imprisonment, and other abuses of police authority, without probable cause, arguable probable cause, or other legal justification.  The plaintiff is entitled to compensatory damages for the harms he has suffered as a result of the defendants' unlawful actions, punitive damages to punish and deter the defendants from engaging in similar unlawful actions in the future, attorney's fees and costs, and all available legal and equitable relief.  The plaintiff demands trial by jury.

1

## PARTIES

2. Plaintiff **Muhammad Faisal** is an adult citizen of New York and resides in Ozone Park, New York (Queens County). Mr. Faisal was born in Pakistan in 1976, and moved to the United States in 1997. He is a United States citizen.

3. Defendant **City of New York** is a municipality of the State of New York. The NYC Corporation Counsel is Zachary Carter. The main office of the Corporation Counsel is located at 100 Church Street, New York, New York, 10007. The New York City Police Department is an agency or instrumentality of the City of New York. The City of New York is being sued under New York state law, pursuant to the doctrine of respondeat superior.

4. Defendant **NYPD Officer Christopher Boaro** (Tax No. 951549) is an employee of the New York City Police Department. Upon information and belief, his place of business is the NYPD 102nd Precinct located at 87-34 118th Street, Richmond Hills, New York, 11418; (718) 805-3200. Officer Boaro personally participated in the unlawful conduct alleged herein. At all relevant times, Officer Boaro was acting under color of state law and in the scope of his employment with the NYPD. Officer Boaro is being sued in his individual capacity under 42 U.S.C. 1983 and New York state law.

5. Defendant **NYPD Officer John Does 1-3** (Tax and Shield Nos. unknown) are employees of the New York City Police Department. Upon information and belief, their place of business is the NYPD 102nd Precinct located at 87-34 118th Street, Richmond Hills, New York, 11418; (718) 805-3200. Officer John Does 1-3 personally participated in the unlawful conduct alleged herein. At all relevant times, Officer John Does 1-3 were acting under color of state law and in the scope of their employment with the

NYPD. Officer John Does 1-3 are being sued in their individual capacity under 42 U.S.C. 1983 and New York state law.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because this action arises under the Constitution and civil rights laws of the United States.

7. This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because the plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

8. This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

9. There are no administrative exhaustion requirements for bringing the present civil rights claim under 42 U.S.C. § 1983. Allegations pertaining to the New York notice of claim requirements are set forth below.

## FACTUAL ALLEGATIONS

10. The events in this case began on October 14, 2014, around 10:00 p.m. Mr. Faisal received a text message from Sundas Qazi asking him to "come and see me" at her apartment in Richmond Hills. Mr. Faisal and Ms. Qazi were married religiously (although not recognized by state law) and were separated at the time of this case. He assumed that Ms. Qazi wanted to talk about their relationship.

11. Mr. Faisal received the text message from Ms. Qazi at 10:01 p.m. He texted back at 10:08 p.m., "Ok I be there." Mr. Faisal was in Jackson Heights when he

3

received Ms. Qazi's text. It took him approximately 45 minutes to drive to her apartment building. During the drive, Ms. Qazi texted and telephoned Mr. Faisal and told him to hurry.

12. Mr. Faisal arrived at Ms. Qazi's apartment building around 10:50 p.m. and drove around for a few minutes looking for a parking place. At 10:53 p.m., Ms. Qazi texted him that she was "at door" of her building. Mr. Faisal parked and walked towards the entrance to Ms. Qazi's apartment building, where he saw Ms. Qazi standing just outside the doorway.

13. As Mr. Faisal approach Ms. Qazi to greet her, two uniformed NYPD officers emerged from inside Ms. Qazi's building, grabbed Mr. Faisal, and told him he was under arrest. The police officers were defendants Boaro and John Doe 1.

14. Upon information and belief, Ms. Qazi previously called the officers to her residence as part of a plan to "trap" Mr. Faisal, then "lured" Mr. Faisal to her apartment building so she could have him arrested.

15. Upon information and belief, Officer Boaro and Officer John Doe 1 knew that Ms. Qazi had texted and telephoned Mr. Faisal and asked him to come see her at her apartment.

16. When Mr. Faisal asked the officers why he was being arrested, they told him that he was being arrested for violating an order of protection.

17. At the time the officers arrested Mr. Faisal, Mr. Faisal was not aware of any order of protection, and no order of protected had been served on him by Ms. Qazi.

18. When Mr. Faisal protested that he did not know what they were talking about and had not been served with any order of protection, the officers told him that his wife had taken out an order of protection against him and said that she had served him with the order. Mr. Faisal denied receiving an order of protection from Ms. Qazi.

4

19. Mr. Faisal asked to see the order of protection, but the officers did not have a copy of the order of protection. Neither the police officers nor Ms. Qazi produced a copy of the alleged order of protection at any time during this incident.

20. Upon information and belief, Officer Boaro and Officer John Doe 1 never were shown a copy of the alleged order of protection by Ms. Qazi before they decided to arrest Mr. Faisal.

21. Upon information and belief, Officer Boaro and Officer John Doe 1 never checked any NYPD or Family Court databases or made any other efforts to confirm the alleged order of protection before they decided to arrest Mr. Faisal.

22. During this incident, Ms. Qazi was acting in an angry and emotional manner, cursing at Mr. Faisal and telling him "this is what you get for cheating on me" (in Urdu). The police officers observed Ms. Qazi's behavior, which should have caused the officers to question the veracity of Ms. Qazi's allegations.

23. Mr. Faisal explained to the officers that he went to Ms. Qazi's apartment building because she had texted and called him to come see her. Mr. Faisal offered to show the text messages to the officers, but they refused.

24. While Mr. Faisal was being detained outside the apartment building, Officer Boaro retrieved Mr. Faisal's driver's license, read the information into the police radio attached to his uniform, and asked if there was an order of protection against Mr. Faisal. Mr. Faisal was standing next to Officer Boaro, and he heard someone respond over the radio that there was no record of an order of protection against Mr. Faisal. Nevertheless, the officers did not release Mr. Faisal.

25. Shortly after Officer Boaro made this radio call, another police cruiser pulled up to the scene and two police officers exited the vehicle, defendants John Doe 2 and John Doe 3. Officer Boaro handed Mr. Faisal's driver's license to one of the officers, who

returned to his police cruiser, where Mr. Faisal observed him using the computer terminal inside the car.  This officer then returned to Officer Boaro and told him that there was no order of protection against Mr. Faisal in the system.  Nevertheless, the officers did not release Mr. Faisal.

26. Officer Boaro told Mr. Faisal that they were going to take him to the precinct in order to "investigate" whether or not there was an order of protection against him.  Mr. Faisal was handcuffed and placed in the back of Officer Boaro's police cruiser. When they were driving to the precinct, Officer Boaro told Mr. Faisal that they were going to take him to the precinct, check their records, and let him go from there.

27. Mr. Faisal was taken to the 102nd Precinct in Richmond Hills.  He arrived at the precinct around 11:10 p.m.  He was searched, fingerprinted, photographed, and placed into a holding cell.  Mr. Faisal's personal property was removed from him and invoiced by Officer Boaro around 1:00 a.m.

28. Upon information and belief, while at the precinct, the defendants made no efforts to confirm that there was an order of protection against Mr. Faisal.

29. Mr. Faisal remained in the holding cell at the precinct for a few hours, at which point he was transferred to Central Booking in Kew Gardens.  Mr. Faisal was detained at Central Booking until approximately 5:00 p.m. on October 15, 2014.

30. Mr. Faisal was not brought before a judge.  Instead all charges against Mr. Faisal were dismissed prior to him being arraigned and he was released from custody. As Mr. Faisal was leaving Central Booking, he was handed a letter from the Queens County District Attorney's Office stating that "your arrest under arrest number: Q14664130, arrest date: 10/14/2014, was dismissed by this Officer prior to Criminal Court arraignment.  This serves as a final disposition of this arrest number."  The letter advised Mr. Faisal that the police and court records of his arrest would be sealed.

31. After Mr. Faisal was released, he went back to the precinct to retrieve his belongings. He saw Officer Boaro, who apologized to Mr. Faisal and told him that he should not have been arrested but they were following "orders."

32. Mr. Faisal spent a total of approximately 18 hours in police custody.

33. As a result of his arrest, Mr. Faisal was suspended for one week from his employment as a cab driver.

34. Plaintiff served a notice of claim on the New York City Comptroller's Office on December 12, 2014 (#2014PI037603). The City conducted a 50-h hearing of the plaintiff on March 19, 2015. To date, the City has neglected or refused to settle this matter administratively. This action is being brought more than 30 days after the notice of claim was served on the City and within one year and 90 days after the incident.

### COUNT ONE:  FALSE ARREST
### (Section 1983; Officer Boaro)

35. Plaintiff repeats and re-alleges Paragraphs 1-34 above.

36. The elements of a claim for false arrest under Section 1983 are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement: and (4) the confinement was not otherwise privileged.

37. Officer Boaro intended to, and did, confine Mr. Faisal.

38. Mr. Faisal was conscious of the confinement.

39. Mr. Faisal did not consent to the confinement.

40. The confinement was not otherwise privileged.

41. There was no probable cause, arguable probable cause, or other legal justification for Mr. Faisal's arrest by Officer Boaro.

42. Officer Boaro is not entitled to qualified immunity.

43. Officer Boaro's actions violated Mr. Faisal's clearly established rights under the Fourth Amendment.

44. It was not objectively reasonable for Officer Boaro to believe that his actions did not violate Mr. Faisal's rights.

45. Officer Boaro acted with intentional, knowing, callous, and/or reckless indifference to Mr. Faisal's rights.

46. As a result of Officer Boaro's unconstitutional conduct, Mr. Faisal suffered loss of liberty, emotional pain and suffering, physical pain and suffering (from being handcuffed and confined in jail cells), lost income, and other compensable injuries, for which he is entitled to an award of compensatory damages.

47. Mr. Faisal is entitled to an award of punitive damages to punish Officer Boaro for his unconstitutional conduct and to deter him from engaging in similar unconstitutional conduct in the future.

**COUNT TWO: FALSE ARREST**
**(Section 1983; Officer John Does 1-3)**

48. Plaintiff repeats and re-alleges Paragraphs 1-47 above.

49. The elements of a claim for false arrest under Section 1983 are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement: and (4) the confinement was not otherwise privileged.

50. Officer John Does 1-3 intended to, and did, confine Mr. Faisal.

51. Mr. Faisal was conscious of the confinement.

52. Mr. Faisal did not consent to the confinement.

53. The confinement was not otherwise privileged.

54. There was no probable cause, arguable probable cause, or other legal justification for Mr. Faisal's arrest by Officer John Does 1-3.

55. Officer John Does 1-3 are not entitled to qualified immunity.

56. Officer John Does 1-3's actions violated Mr. Faisal's clearly established rights under the Fourth Amendment.

57. It was not objectively reasonable for Officer John Does 1-3 to believe that their actions did not violate Mr. Faisal's rights.

58. Officer John Does 1-3 acted with intentional, knowing, callous, and/or reckless indifference to Mr. Faisal's rights.

59. As a result of Officer John Does 1-3's unconstitutional conduct, Mr. Faisal suffered loss of liberty, emotional pain and suffering, physical pain and suffering (from being handcuffed and confined in jail cells), lost income, and other compensable injuries, for which he is entitled to an award of compensatory damages.

60. Mr. Faisal is entitled to an award of punitive damages to punish Officer John Does 1-3 for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT THREE: FALSE ARREST
(New York law; Officer Boaro; City of New York)

61. Plaintiff repeats and re-alleges Paragraphs 1-60 above.

62. The elements of a claim for false arrest under New York law are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement: and (4) the confinement was not otherwise privileged.

63. Officer Boaro intended to, and did, confine Mr. Faisal.

64. Mr. Faisal was conscious of the confinement.

9

65. Mr. Faisal did not consent to the confinement.

66. The confinement was not otherwise privileged.

67. There was no probable cause, arguable probable cause, or other legal justification for Mr. Faisal's arrest and imprisonment by Officer Boaro.

68. Officer Boaro is not entitled to qualified immunity.

69. Officer Boaro's actions were taken without a reasonable basis.

70. Officer Boaro's actions were taken in bad faith.

71. Officer Boaro's actions were intentional, wanton, and malicious.

72. As a result of Officer Boaro's unlawful conduct, Mr. Faisal suffered loss of liberty, emotional pain and suffering, physical pain and suffering (from being handcuffed and confined in jail cells), lost income, and other compensable injuries, for which he is entitled to an award of compensatory damages.

73. Mr. Faisal is entitled to an award of punitive damages to punish Officer Boaro for his unlawful conduct and to deter him from engaging in similar unlawful conduct in the future.

74. Because Officer Boaro's actions were taken in the scope of his employment with the NYPD, the City of New York is vicariously liable for the harm caused by his tortious conduct.

### COUNT THREE:  FALSE ARREST
**(New York law; Officer John Does 1-3; City of New York)**

75. Plaintiff repeats and re-alleges Paragraphs 1-74 above.

76. The elements of a claim for false arrest under New York law are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement: and (4) the confinement was not otherwise privileged.

77. Officer John Does 1-3 intended to, and did, confine Mr. Faisal.

78. Mr. Faisal was conscious of the confinement.

79. Mr. Faisal did not consent to the confinement.

80. The confinement was not otherwise privileged.

81. There was no probable cause, arguable probable cause, or other legal justification for Mr. Faisal's arrest and imprisonment by Officer John Does 1-3.

82. Officer John Does 1-3 are not entitled to qualified immunity.

83. Officer John Does 1-3's actions were taken without a reasonable basis.

84. Officer John Does 1-3's actions were taken in bad faith.

85. Officer John Does 1-3's actions were intentional, wanton, and malicious.

86. As a result of Officer John Does 1-3's unlawful conduct, Mr. Faisal suffered loss of liberty, emotional pain and suffering, physical pain and suffering (from being handcuffed and confined in jail cells), lost income, and other compensable injuries, for which he is entitled to an award of compensatory damages.

87. Mr. Faisal is entitled to an award of punitive damages to punish Officer John Does 1-3 for their unlawful conduct and to deter them from engaging in similar unlawful conduct in the future.

88. Because Officer John Does 1-3's actions were taken in the scope of their employment with the NYPD, the City of New York is vicariously liable for the harm caused by their tortious conduct.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, plaintiff Muhammad Faisal hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff demands judgment against the Defendants for:

A. Compensatory damages in an amount no less than $180,000;

B. Punitive damages in an amount no less than $180,000;

C. Pre-judgment and post-judgment interest as allowed by law;

D. Attorney's fees, costs, and disbursements; and

E. All other relief that the Plaintiff may be entitled to under law, or as justice may require.

Dated:   June 29, 2015
         New York, NY

Respectfully submitted,

*Steven M. Warshawsky*

By: _____
STEVEN M. WARSHAWSKY (SW 5431)
The Warshawsky Law Firm
Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY  10118
Tel:  (212) 601-1980
Fax:  (212) 601-2610
Email:  smw@warshawskylawfirm.com
Website:  www.warshawskylawfirm.com
